**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISON**

| | | |
|---|---|---|
| ERIKA GEORGE, | ) | **COMPLAINT** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Case No: 4:25-cv-997 |
| NATIONAL CREDIT ADJUSTERS, LLC | ) | |
| | ) | |
| & | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| COMPLETE CREDIT SOLUTIONS, INC. | ) | |
| | ) | |
| & | ) | |
| | ) | |
| MIDLAND CREDIT MANAGEMENT, INC. | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EXPERIAN INFORMATION SOLUTIONS, INC. | ) | |
| | ) | |
| & | ) | |
| | ) | |
| EQUIFAX INFORMATION SERVICES, LLC | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT AND JURY DEMAND

COMES NOW, Plaintiff Erika George, by and through the undersigned counsel, and for her Complaint against Defendants National Credit Adjusters, LLC ("NCA"), Complete Credit Solutions, Inc. ("CCS"), Midland Credit Management, Inc. ("MCM"), Experian Information Solutions, Inc. ("EXP"), Equifax Information Services, LLC ("EQ") (and together collectively, "Defendants") for violations under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, et seq. ("FDCPA") and for violations under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), states as follows:

## JURISDICTION

1.      This court has jurisdiction of the federal claim under 15 U.S.C. § 1692k(d) and 1681(p).

2.      Venue is proper because Plaintiff resides here, the acts and transactions occurred here, and NCA, CCS, MCM, EXP, and EQ transact business here.

3.      Under 28 U.S. Code § 1391(b)(2) a civil action may be brought in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

4.      Under 28 U.S. Code § 1391(d) when a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate state.

5.      Plaintiff resides in the city of Baytown, a part of Harris County, TX 77521.

6.      The acts that occurred giving rise to this complaint occurred while Plaintiff was in the city of Baytown, a part of Harris County, TX 77521, making the Houston Division a proper venue under 28 U.S. Code § 1391(b)(2).

7.      Defendant NCA, a Kansas corporation headquartered in Hutchinson, KS, practices as a debt collector throughout the country, including Texas.

8.      Defendant CCS, a Texas corporation headquartered in Bedford, TX, practices as a debt collector throughout the country, including Texas.

9.      Defendant MCM, a California corporation headquartered in San Diego, CA, practices as a debt collector throughout the country, including Texas.

10.     Defendants NCA, CCS, and MCM attempt to collect alleged debts throughout the state of Texas, including in Baytown city and Harris County.

2

11.    Defendants NCA, CCS, and MCM have actual knowledge of where Plaintiff resided, and by attempting to collect from Plaintiff, purposefully availed themselves to the jurisdiction in which Plaintiff resided.

12.    Defendants NCA, CCS, and MCM have sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Baytown city and Harris County and Defendants attempt to collect alleged debts throughout the state of Texas.

13.    Defendants NCA, CCS, and MCM knowingly attempted to collect on debts allegedly incurred in Baytown, Texas and thus have sufficient minimum contacts with this venue is additionally proper under 28 U.S. Code § 1391(b)(1).

14.    Defendant EXP, an Ohio corporation headquartered in Costa Mesa, CA, practices as a debt collector throughout the country, including Texas.

15.    Defendant EXP serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Baytown city and Harris County.

16.    Defendant EXP has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant EXP purposefully availed itself to the jurisdiction in which Plaintiff resided.

17.    Defendant EXP has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Baytown city and Harris County and Defendant attempts to collect alleged debts throughout the state of Texas.

18.    Defendant EXP knowingly reported information regarding a Plaintiff domiciled in Baytown, Texas and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

19.    Defendant EQ, a Georgia corporation headquartered in Atlanta, GA, practices as a debt collector throughout the country, including Texas.

3

20.    Defendant EQ serves as a credit reporting agency of consumer credit throughout the state of Texas, including in Baytown city and Harris County.

21.    Defendant EQ has actual knowledge of where Plaintiff resided, and by improperly reporting to Plaintiff's credit and providing Plaintiff with such an update, Defendant EQ purposefully availed itself to the jurisdiction in which Plaintiff resided.

22.    Defendant EQ has sufficient minimum contacts with this venue as the alleged injuries caused to Plaintiff were caused while Plaintiff was in Baytown city and Harris County and Defendant attempts to collect alleged debts throughout the state of Texas.

23.    Defendant EQ knowingly reported information regarding a Plaintiff domiciled in Baytown, Texas and thus has sufficient minimum contacts with this venue, making venue additionally proper under 28 U.S. Code § 1391(b)(1).

## STANDING

24.    Plaintiff has a congressionally defined right to receive all communications from a debt collector free from any misrepresentations and false threats.

25.    NCA, CCS, and MCM's collection activities violated the FDCPA.

26.    Defendants' credit reporting and/or failure to properly dispute information violated the FCRA.

27.    Plaintiff has thus suffered an injury as a result of Defendants' conduct, giving rise to standing before this Court. Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1544 (2016), quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 580 (1992) (Congress has the power to define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before.); Bellwood v. Dwivedi, 895 F. 2d 1521, 1526-27 (7th Cir. 1990) ("Congress can create new substantive rights, such as a right to be free from misrepresentations, and if that right is invaded the holder of the right can sue without running afoul of Article III, even if he incurs no other injury[.]").

4

28.    "Without the protections of the FDCPA, Congress determined, the '[e]xisting laws and procedures for redressing these injuries are inadequate to protect consumers.'" Lane v. Bayview Loan Servicing, LLC, No. 15 C 10446, 2016 WL 3671467, at *3 (N.D. Ill. July 11, 2016)(quoting 15 U.S.C. § 1692(b)). Thus, a failure to honor a consumer's right under the FDCPA constitutes an injury in fact for Article III standing. See id. at *3 (holding that a consumer "has alleged a sufficiently concrete injury because he alleges that [Defendant] denied her the right to information due to her under the FDCPA."); see also Church v. Accretive Health, Inc., No. 15-15708, 2016 WL 3611543, at *3 (11th Cir. July 6, 2016) (holding that consumer's § 1692g claim was sufficiently concrete to satisfy injury-in-fact requirement).

29.    "[E]ven though actual monetary harm is a sufficient condition to show concrete harm, it is not a necessary condition." Lane, 2016 WL 3671467 at *4.

## PARTIES

30.    Plaintiff, Erika George (hereafter "Plaintiff"), is a natural person currently residing in Harris County, in the state of Texas.

31.    Plaintiff is a "consumer" within the meaning of the FDCPA, 15 U.S.C. § 1692a(3).

32.    Plaintiff is a "consumer" as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

33.    Defendant NCA is a Kansas corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at PO Box 550, Hutchinson, KS 67504.

34.    Defendant CCS is a Texas corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 2921 Brown Trail, Suite 100, Bedford, TX 76021.

35.     Defendant MCM is a California corporation engaged in the business of collecting debts, using mails and telephone, in this state with its principal address at 350 Camino De La Reina, Suite 100, San Diego, CA 92108.

36.     NCA, CCS, and MCM are each engaged in the business of a collection agency, using the mails, telephone, and consumer collection agencies to collect consumer debts originally owed to others.

37.     NCA, CCS, and MCM regularly collect or attempt to collect defaulted consumer debts due or asserted to be due another, and are each a "debt collector" as defined in 15 U.S.C. § 1692a(6) of the FDCPA.

38.     Defendant EXP is an Ohio corporation with its principal place of business located at 475 Anton Boulevard, Costa Mesa, CA 92626.

39.     Defendant EQ is a Georgia corporation with its principal place of business located at 1550 Peachtree St. NE #H-46, Atlanta, GA 30309.

40.     Defendants NCA, CCS, and MCM are each a "furnisher of information" as that term is defined by the FCRA, 15 U.S.C. §1681s-2(b).

41.     EXP and EQ are each a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. § 1681a(p). EXP and EQ regularly engage in the business of compiling and maintaining files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity, each of the following regarding consumers residing nationwide:

    a. Public record information;

    b. Credit account information from persons who furnish that information regularly and in the ordinary course of business.

**FACTUAL ALLEGATIONS**

42.    Plaintiff is a natural person allegedly obligated to pay a debt asserted to be owed to creditors other than NCA, CCS, Resurgent Capital Services ("RCS"), and MCM.

43.    On a date better known by NCA, NCA began to attempt to collect an alleged consumer debt from the Plaintiff.

44.    The alleged debt was said to be owed to Speedy Cash and Cash Central.

45.    That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

46.    That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

47.    The reporting of the alleged debt is inaccurate in that it alleges a debt the Plaintiff does not owe from a credit holder the Plaintiff is unaware of.

48.    That NCA was reporting the collection account on Plaintiff's credit report with EXP and EQ.

49.    That NCA was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

50.    NCA's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

51.    On or about February 20, 2024, Plaintiff sent dispute letters via USPS mail to EXP and EQ notifying the account with NCA as disputed.

52.    These letters provided notice of the inaccurate reporting to EXP and EQ.

53.    Once EXP and EQ received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case NCA.

54.    EXP and EQ received the letters sent by Plaintiff.

55.    EXP and EQ transmitted notice of these disputes to NCA via an Automated Credit Dispute Verification form ("ACDV").

56.    NCA was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

57.    Alternatively, EXP and EQ negligently failed to send notice of the disputes to NCA after receiving notice of the disputes from Plaintiff.

58.    Alternatively, EXP and EQ willfully failed to send notice of the disputes to NCA after receiving notice of the disputes from Plaintiff.

59.    After receiving this notice, in any subsequent voluntary reporting, NCA must then include the dispute notation on said account.

60.    On or about April 24, 2024, Plaintiff received an updated credit file from EXP.

61.    That the credit report was updated on April 15, 2024 by NCA.

62.    That the updated April 24, 2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to NCA.

63.    Alternatively, that the updated April 24, 2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify NCA.

64.    EXP failed to properly reinvestigate Plaintiff's dispute.

65.    As a result of EXP's failure to reinvestigate, the updated April 24, 2024 credit report contained inaccurate information.

66.    EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

67.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

68.     The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

69.     The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

70.     On or about April 24, 2024, Plaintiff received an updated credit file from EQ.

71.     That the credit report was updated on April 15, 2024 by NCA.

72.     That the updated April 24, 2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to NCA.

73.     Alternatively, that the updated April 24, 2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify NCA.

74.     EQ failed to properly reinvestigate Plaintiff's dispute.

75.     As a result of EQ's failure to reinvestigate, the updated April 24, 2024 credit report contained inaccurate information.

76.     EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

77.     The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

78.     The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

79.     The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

80.     That the updated April 24, 2024 credit report did not contain updated marked as disputed information.

81.     The updated April 24, 2024 credit report contained inaccurate information.

82.     NCA failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

83.     EXP and EQ failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

84.     NCA must have voluntarily updated the Plaintiff's alleged account by communicating with EXP and EQ.

85.     That NCA furnished information to EXP and EQ regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP, EQ, and   of the disputes.

86.     That NCA failed to update the account information and mark the account as disputed on the updated April 24, 2024 credit report after Plaintiff disputed the account on February 20, 2024 and was given notice of such by EXP and EQ.

87.     In the alternative, if NCA properly updated the account information and marked the account as disputed with EXP and EQ after receiving notification of disputes from Plaintiff, then EXP and EQ failed to update the account information and mark the account as disputed on the updated April 24, 2024 credit report.

88.     That NCA never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP and EQ.

89.     Alternatively, EXP and EQ never updated the account information and marked the account as disputed even after receiving information of the dispute remark from NCA in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

90.     On a date better known by CCS, CCS began to attempt to collect an alleged consumer debt from the Plaintiff.

91.     The alleged debt was said to be owed to Sunup Financial LLC.

92.     That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

93.     That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

94.     The reporting of the alleged debt is inaccurate in that it alleges a debt held by a creditor the plaintiff has no knowledge of.

95.     The reporting of the alleged debt contains inaccurate dispute information.

96.     That CCS was reporting the collection account on Plaintiff's credit report with EXP and EQ.

97.     That CCS was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

98.     CCS's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

99.     On or about February 20, 2024, Plaintiff sent dispute letters via USPS mail to EXP and EQ notifying the account with CCS as disputed.

100.     These letters provided notice of the inaccurate reporting to EXP and EQ.

101.     Once EXP and EQ received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case CCS.

102.     EXP and EQ received the letters sent by Plaintiff.

103.     EXP and EQ transmitted notice of these disputes to CCS via an Automated Credit Dispute Verification form ("ACDV").

104.     CCS was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

105.    Alternatively, EXP and EQ negligently failed to send notice of the disputes to CCS after receiving notice of the disputes from Plaintiff.

106.    Alternatively, EXP and EQ willfully failed to send notice of the disputes to CCS after receiving notice of the disputes from Plaintiff.

107.    After receiving this notice, in any subsequent voluntary reporting, CCS must then include the dispute notation on said account.

108.    On or about April 24, 2024, Plaintiff received an updated credit file from EXP.

109.    That the credit report was updated on April 10, 2024 by CCS.

110.    That the updated April 24, 2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to CCS.

111.    Alternatively, that the updated April 24, 2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify CCS.

112.    EXP failed to properly reinvestigate Plaintiff's dispute.

113.    As a result of EXP's failure to reinvestigate, the updated April 24, 2024 credit report contained inaccurate information.

114.    EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

115.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

116.    The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

117.    The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

118.    On or about April 24, 2024, Plaintiff received an updated credit file from EQ.

119.    That the credit report was updated on April 10, 2024 by CCS.

120.     That the updated April 24, 2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to CCS.

121.     Alternatively, that the updated April 24, 2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify CCS.

122.     EQ failed to properly reinvestigate Plaintiff's dispute.

123.     As a result of EQ's failure to reinvestigate, the updated April 24, 2024 credit report contained inaccurate information.

124.     EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

125.     The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

126.     The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

127.     The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

128.     The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

129.     That the updated April 24, 2024 credit report did not contain updated marked as disputed information.

130.     The updated April 24, 2024 credit report contained inaccurate information.

131.     CCS failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

132.     EXP and EQ failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

133.    CCS must have voluntarily updated the Plaintiff's alleged account by communicating with EXP and EQ.

134.    That CCS furnished information to EXP and EQ regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP and EQ of the disputes.

135.    That CCS failed to update the account information and mark the account as disputed on the updated April 24, 2024 credit report after Plaintiff disputed the account on February 20, 2024 and was given notice of such by EXP and EQ.

136.    In the alternative, if CCS properly updated the account information and marked the account as disputed with EXP and EQ after receiving notification of disputes from Plaintiff, then EXP and EQ failed to update the account information and mark the account as disputed on the updated April 24, 2024 credit report.

137.    That CCS never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP and EQ.

138.    Alternatively, EXP, EQ, and   never updated the account information and marked the account as disputed even after receiving information of the dispute remark from CCS in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

139.    On a date better known by RCS, RCS began to attempt to collect an alleged consumer debt from the Plaintiff.

140.    The alleged debt was said to be owed to Credit One Bank N.A.

141.    That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

142.    That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

14

143.    The reporting of the alleged debt is inaccurate in that it alleges a debt from a creditor unknown to the Plaintiff.

144.    That RCS was reporting the collection account on Plaintiff's credit report with EXP and EQ.

145.    That RCS was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

146.    RCS's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

147.    On or about February 20, 2024, Plaintiff sent dispute letters via USPS mail to EXP and EQ notifying the account with RCS as disputed.

148.    These letters provided notice of the inaccurate reporting to EXP and EQ.

149.    Once EXP and EQ received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case RCS.

150.    EXP and EQ received the letters sent by Plaintiff.

151.    EXP and EQ transmitted notice of these disputes to RCS via an Automated Credit Dispute Verification form ("ACDV").

152.    RCS was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

153.    Alternatively, EXP and EQ negligently failed to send notice of the disputes to RCS after receiving notice of the disputes from Plaintiff.

154.    Alternatively, EXP and EQ willfully failed to send notice of the disputes to RCS after receiving notice of the disputes from Plaintiff.

155.    After receiving this notice, in any subsequent voluntary reporting, RCS must then include the dispute notation on said account.

156.     On or about April 24, 2024, Plaintiff received an updated credit file from EXP.

157.     That the credit report was updated on April 3, 2024 by RCS.

158.     That the updated April 24, 2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to RCS.

159.     Alternatively, that the updated April 24, 2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify RCS.

160.     EXP failed to properly reinvestigate Plaintiff's dispute.

161.     As a result of EXP's failure to reinvestigate, the updated April 24, 2024 credit report contained inaccurate information.

162.     EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

163.     The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

164.     The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

165.     The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

166.     On or about April 24, 2024, Plaintiff received an updated credit file from EQ.

167.     That the credit report was updated on April 3, 2024 by RCS.

168.     That the updated April 24, 2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to RCS.

169.     Alternatively, that the updated April 24, 2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify RCS.

170.     EQ failed to properly reinvestigate Plaintiff's dispute.

16

171.    As a result of EQ's failure to reinvestigate, the updated April 24, 2024 credit report contained inaccurate information.

172.    EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

173.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

174.    The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

175.    The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

176.    That the updated April 24, 2024 credit report did not contain updated marked as disputed information.

177.    The updated April 24, 2024 credit report contained inaccurate information.

178.    RCS failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

179.    EXP and EQ failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

180.    RCS must have voluntarily updated the Plaintiff's alleged account by communicating with EXP and EQ.

181.    That RCS furnished information to EXP and EQ regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP and EQ of the disputes.

182.    That RCS failed to update the account information and mark the account as disputed on the updated April 24, 2024 credit report after Plaintiff disputed the account on February 20, 2024 and was given notice of such by EXP and EQ.

183.    In the alternative, if RCS properly updated the account information and marked the account as disputed with EXP and EQ after receiving notification of disputes from Plaintiff, then EXP and EQ failed to update the account information and mark the account as disputed on the updated April 24, 2024 credit report.

184.    That RCS never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP and EQ.

185.    Alternatively, EXP and EQ never updated the account information and marked the account as disputed even after receiving information of the dispute remark from RCS in its subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

186.    On a date better known by MCM, MCM began to attempt to collect an alleged consumer debt from the Plaintiff.

187.    The alleged debt was said to be owed to Comenity Bank and Capital One.

188.    That this alleged debt would only have been incurred for a personal line of credit and would have been only for personal or family purposes.

189.    That this alleged account would have only been used for personal, family, or household purposes and would thus be a consumer debt.

190.    The reporting of the alleged debt is inaccurate in that it is incomplete to the extent that it is confusing to the Plaintiff.

191.    That MCM was reporting the collection account on Plaintiff's credit report with EXP and EQ.

192.    That MCM was voluntarily reporting the alleged collection account on Plaintiff's credit report with the credit reporting agencies.

193.    MCM's voluntary reporting to the credit reporting agencies is a "communication" under the FDCPA in connection with the collection of an alleged debt.

18

194.    On or about February 20, 2024, Plaintiff sent dispute letters via USPS mail to EXP and EQ notifying the account with MCM as disputed.

195.    These letters provided notice of the inaccurate reporting to EXP and EQ.

196.    Once EXP and EQ received notice of these letters, they were required to provide notice of such disputes and request for re-investigation to the furnisher, in this case MCM.

197.    EXP and EQ received the letters sent by Plaintiff.

198.    EXP and EQ transmitted notice of these disputes to MCM via an Automated Credit Dispute Verification form ("ACDV").

199.    MCM was required to investigate Plaintiff's dispute in full upon receipt of the ACDV, and by extension, notice of the inaccuracy.

200.    Alternatively, EXP and EQ negligently failed to send notice of the disputes to MCM after receiving notice of the disputes from Plaintiff.

201.    Alternatively, EXP and EQ willfully failed to send notice of the disputes to MCM after receiving notice of the disputes from Plaintiff.

202.    After receiving this notice, in any subsequent voluntary reporting, MCM must then include the dispute notation on said account.

203.    On or about April 24, 2024, Plaintiff received an updated credit file from EXP.

204.    That the credit report was updated on April 19, 2024 by MCM.

205.    That the updated April 24, 2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EXP, and transmitted to MCM.

206.    Alternatively, that the updated April 24, 2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EXP after EXP failed to notify MCM.

207.    EXP failed to properly reinvestigate Plaintiff's dispute.

208.    As a result of EXP's failure to reinvestigate, the updated April 24, 2024 credit report contained inaccurate information.

209.    EXP failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

210.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

211.    The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

212.    The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

213.    On or about April 24, 2024, Plaintiff received an updated credit file from EQ.

214.    That the credit report was updated on April 19, 2024 by MCM.

215.    That the updated April 24, 2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff, received by EQ, and transmitted to MCM.

216.    Alternatively, that the updated April 24, 2024 credit report did not contain updated account information even after such dispute was sent by Plaintiff and received by EQ after EQ failed to notify MCM.

217.    EQ failed to properly reinvestigate Plaintiff's dispute.

218.    As a result of EQ's failure to reinvestigate, the updated April 24, 2024 credit report contained inaccurate information.

219.    EQ failed to follow reasonable procedures to ensure maximum accuracy by not sending Plaintiff's dispute to the furnisher after it received the dispute directly from Plaintiff.

220.    The inaccurate reporting caused Plaintiff to be subjected to higher interest rates on lines of credit.

221.    The inaccurate reporting caused Plaintiff to be subjected to a credit denial.

222.    The inaccurate reporting caused Plaintiff to be subjected to loss of credit opportunity.

223.    That the updated April 24, 2024 credit report did not contain updated marked as disputed information.

224.    The updated April 24, 2024 credit report contained inaccurate information.

225.    MCM failed to properly investigate or otherwise verify Plaintiff's dispute before voluntarily re-reporting the alleged debt.

226.    EXP, EQ, and   failed to follow reasonable procedures to ensure maximum possible accuracy in the reporting of Plaintiff's credit.

227.    MCM must have voluntarily updated the Plaintiff's alleged account by communicating with EXP and EQ.

228.    That MCM furnished information to EXP and EQ regarding Plaintiff's account without notifying them the account had been disputed by consumer, even after receiving notice by EXP and EQ of the disputes.

229.    That MCM failed to update the account information and mark the account as disputed on the updated April 24, 2024 credit report after Plaintiff disputed the account on February 20, 2024 and was given notice of such by EXP and EQ.

230.    In the alternative, if MCM properly updated the account information and marked the account as disputed with EXP, EQ, and   after receiving notification of disputes from Plaintiff, then EXP, EQ, and   failed to update the account information and mark the account as disputed on the updated April 24, 2024 credit report.

231.    That MCM never properly updated the account information or marked the account as disputed even after receiving information of the disputes from EXP and EQ.

232.    Alternatively, EXP, EQ, and   never updated the account information and marked the account as disputed even after receiving information of the dispute remark from MCM in its

21

subsequent voluntary reporting or via a response to an Automated Credit Dispute Verification ("ACDV") request.

233.    All of NCA, CCS, RCS, and MCM's actions under the FDCPA complained of herein occurred within one year of the date of this Complaint.

234.    All of Defendants' actions under the FCRA complained of herein occurred within two years of the date of this Complaint.

235.    Plaintiff suffered injury-in-fact by being subjected to inaccurate, unfair, and abusive practices of the NCA, CCS, RCS, and MCM, and/or EXP and EQ.

236.    Plaintiff suffered actual harm by being the target of inaccurate credit reporting and/or misleading debt collection communications by NCA, CCS, RCS, and MCM, and/or EXP and EQ.

237.    Plaintiff has suffered actual harm due to credit denials caused by false credit reporting by NCA, CCS, RCS, and MCM, and/or EXP and EQ.

238.    Plaintiff has suffered actual harm based on his costs and time of repairing his credit, pain and suffering, embarrassment, inconvenience, lost economic opportunity, loss of incidental time, frustration, emotional distress, mental anguish, fear of personal and financial safety and security, and attorney's fees.

239.    Plaintiff's injury-in-fact is fairly traceable to the challenged representations of NCA, CCS, RCS, and MCM, and/or EXP and EQ.

240.    Plaintiff's injury-in-fact is likely to be redressed by a favorable decision in this Court.

**Count I: Violations Of § 1692e Of The FDCPA – False, Deceptive, Or Misleading Collection Actions**

241.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

242.     Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representation or means in connection with the collection of any debt.

243.     That because Plaintiff disputed the debt, NCA, CCS, and MCM, when choosing to contact the consumer reporting agencies, were obligated to inform them of the disputed status of the accounts. See Dixon v. RJM Acquisitions, L.L.C., 640 Fed. Appx. 793 (10th Cir. 2016) (Reversed summary judgment to the collection agency on the consumer's § 1692e(8) claim that after she had disputed a debt, the agency had nevertheless reported the debt without disclosing the disputed. The consumer created a genuine fact issue given that she said during the recorded conversation: "I feel that all I owe is $20." A reasonable fact finder could treat the statement as a dispute of the alleged $102.99 debt.); Llewellyn v. Allstate Home Loans, Inc., 711 F.3d 1173 (10th Cir. 2013) "(We agree with the Eighth Circuit's interpretation of § 1692e(8) that a debt collector does not have an affirmative duty to notify [credit reporting agencies] that a consumer disputes the debt unless the debt collector knows of the dispute and elects to report to a CRA.")

244.     NCA, CCS, and MCM used deceptive and misleading tactics when it communicated personal credit information which was known or which should have been known to be false, including the failure to communicate the debts were disputed in violation of 15 U.S.C. §§ 1692e, 1692e(8). See Sayles v. Advanced Recovery Systems, Incorporated, 865 F.3d 246, 249 (5th Cir. 2017); Brady v. Credit Recovery Co., 160 F.3d 64 (1st Cir. 1998) (The plain language of the FDCPA requires debt collectors to communicate the disputed status of a debt if the debt collector knows or should know that the debt is disputed. This standard requires no notification by the consumer but depends on the debt collector's knowledge that a debt is disputed, regardless of how or when that knowledge is required.)

245.     NCA, CCS, and MCM's collection communications are to be interpreted under the "least sophisticated consumer" standard. See, Goswami v. Am. Collections Enter., Inc., 377 F.3d 488, 495 (5th Cir. 2004); Taylor v. Perrin, Landry, deLaunay & Durand, 103 F.3d 1232, 1236 (5th Cir.1997)

(When deciding whether a debt collection letter violates the FDCPA, this court "must evaluate any potential deception in the letter under an unsophisticated or least sophisticated consumer standard.) See Also, <u>Goswami</u>, 377 F.3d at 495. (We must "assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors.")

246.    NCA, CCS, and MCM violated the Plaintiff's right not to be the target of misleading debt collection communications.

247.    NCA, CCS, and MCM violated the Plaintiff's right to a truthful and fair debt collection process.

248.    NCA, CCS, and MCM's communications with Plaintiff were deceptive and misleading.

249.    NCA, CCS, and MCM used unfair and unconscionable means to attempt to collect the alleged debt.

250.    NCA, CCS, and MCM's communications were designed to cause the debtor to suffer a harmful disadvantage in charting a course of action in response to NCA, CCS, and MCM's collection efforts.

251.    NCA, CCS, and MCM's failure to mark debts as disputed they know or should know are disputed violates § 1692e, 1692e(8) of the FDCPA.

252.    NCA, CCS, and MCM's conduct has caused Plaintiff to suffer damages including but not limited to a damaged credit score, the loss of time incurred by Plaintiff, and attorneys' fees paid for advice regarding his situation.

253.    Congress has found that "[a]busive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a).

254.    Here, Plaintiff has suffered an injury-in-fact in at least one of the manners contemplated by Congress when it passed the FDCPA because of NCA, CCS, and MCM's conduct.

255.    The FDCPA ensures that consumers are fully and truthfully apprised of the facts and of their rights, the act enables them to understand, make informed decisions about, and participate fully and meaningfully in the debt collection process. The purpose of the FDCPA is to provide information that helps consumers to choose intelligently. NCA, CCS, and MCM's false representations misled the Plaintiff in a manner that deprived her of his right to enjoy these benefits; these materially misleading statements trigger liability under section 1692e of the Act.

256.    Plaintiff seeks to end these violations of the FDCPA. Plaintiff has suffered actual damages including but not limited to, fear, stress, mental anguish, emotional stress and acute embarrassment.

257.    Defendants NCA, CCS, and MCM's violation of § 1692e of the FDCPA renders them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Erika George, prays that this Court:

A.    Declare that NCA, CCS, and MCM's debt collection actions violate the FDCPA;

B.    Enter judgment in favor of Plaintiff Erika George, and against NCA, CCS, and MCM, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.    Grant other such further relief as deemed just and proper.

### Count II: Violations Of § 1692d Of The FDCPA – Harassment or Abuse

258.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

259.    Section 1692d prohibits any debt collector from engaging in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt.

260.    NCA, CCS, and MCM's communications with Plaintiff were meant to shame, embarrass, and harass Plaintiff by misrepresenting the alleged debts status.

261.    NCA, CCS, and MCM attempted to coerce Plaintiff into paying alleged debts his otherwise would not have paid by submitting false and inaccurate information to his credit report.

262.    NCA, CCS, and MCM could have no other purpose in doing this except to harm Plaintiff's reputation and deprive her of his ability to receive any type of credit line unless he paid the alleged debts.

263.    Defendants NCA, CCS, and MCM's violation of § 1692d of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Erika George, prays that this Court:

A.    Declare that NCA, CCS, and MCM's debt collection actions violate the FDCPA;

B.    Enter judgment in favor of Plaintiff Erika George, and against NCA, CCS, and MCM, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.    Grant other such further relief as deemed just and proper.

## COUNT III: Violations Of § 1692f Of The FDCPA – Misleading Representations & Unfair Practices

264.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

265.    Section 1692f prohibits the use of unfair and unconscionable means to collect a debt.

26

266.    NCA, CCS, and MCM attempted to collect a debts by distributing false information that would negatively impact Plaintiff's rights as a consumer, as well as that would harm Plaintiff's financial health.

267.    NCA, CCS, and MCM used unfair and unconscionable means to attempt to collect the alleged debts.

268.    NCA, CCS, and MCM's violation of § 1692f of the FDCPA render them liable for actual and statutory damages, costs, and reasonable attorneys' fees. See, 15 U.S.C. § 1692k.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Erika George, prays that this Court:

A.    Declare that NCA, CCS, RCS, and MCMs debt collection actions violate the FDCPA;

B.    Enter judgment in favor of Plaintiff Erika George, and against NCA, CCS, RCS, and MCM, for actual and statutory damages, costs, and reasonable attorneys' fees as provided by § 1692k(a) of the FDCPA; and

C.    Grant other such further relief as deemed just and proper.

**Count IV: Violation Of 15 U.S.C. § 1681e(b) of the FCRA-Reinvestigations of Disputed Information**

269.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

270.    Plaintiff's credit report contained inaccurate information as it did not include a dispute notation even after Plaintiff disputed the accounts directly with EXP, EQ, and .

271.    EXP and EQ failed to follow reasonable procedures to keep Plaintiff's credit file accurate by reporting debts from creditors unknown to the Plaintiff and reporting incomplete and confusing information; EXP and EQ failed to send notice of the disputes received from Plaintiff to the furnishers as required, and EXP and EQ failed to update Plaintiff's credit file to ensure accuracy;

EXP, EQ, and  violated 15 U.S.C. 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it published and maintains concerning the Plaintiff.

272.    As a result of this conduct, action and inaction of EXP and EQ the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from a credit, the mental and emotional pain and anguish and the humiliation and embarrassment of credit denials.

273.    EXP and EQ's conduct, action, and inaction were willful, rendering them liable for statutory damages in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent, entitling the Plaintiff to recovery under 15 U.S.C. § 1681o.

274.    Due to EXP and EQ's conduct, Plaintiff is entitled to recovery costs and attorney's fees from EXP and EQ in the amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Erika George, prays that this Court:

A.    Declare that EXP, EQ, and 's credit reporting actions violate the FCRA;

B.    For EXP and EQ's willful violations, enter judgment in favor of Plaintiff Erika George, and against EXP and EQ for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.    For EXP and EQ's negligent violations, enter judgment in favor of Plaintiff Erika George, and against EXP and EQ for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

D.    Or, in the alternative, enter judgment in favor of Plaintiff Erika George, and against EXP and EQ for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

E.      Grant other such further relief as deemed just and proper.

## Count V: Violation Of 15 U.S.C. § 1681i of the FCRA-Reinvestigations of Disputed Information

275.    Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

276.    EXP and EQ were reporting inaccurate and incomplete information on Plaintiff's credit report.

277.    EXP and EQ reported inaccurate dispute information by reporting debts from creditors unknown to the Plaintiff and providing incomplete information which confused the Plaintiff.

278.    EXP and EQ's inaccurate and incomplete reporting of Plaintiff's credit file is misleading to the extent that it can adversely impact Plaintiff's credit decisions.

279.    Plaintiff disputed the accuracy of his credit report directly with EXP and EQ via dispute letters sent through USPS.

280.    Defendants EXP and EQ violated 15 U.S.C. § 1681 after failing to conduct lawful reinvestigations of Plaintiff's disputes and provide the furnishers with notice of Plaintiff's dispute.

281.    EXP and EQ failed to report the status of the disputed accounts as disputed or delete the inaccuracy from Plaintiff's credit report after receiving notice of the disputes directly from Plaintiff.

282.    Defendants EXP and EQ willfully or negligently violated 15 U.S.C. § 1681i by failing to forward all relevant information to NCA, CCS, RCS, and MCM; by failing to maintain reasonable procedures with which to filter and verify disputed information in the Plaintiff's credit file; and by relying upon verification from a source they have reason to know is unreliable; and by publishing inaccurate information.

283.     As a result of this conduct, action and inaction of EXP and EQ the Plaintiff suffered damage by loss of credit, loss of the ability to purchase and benefit from credit, and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

284.     EXP and EQ's conduct, action and inaction were willful, rendering them liable for actual or statutory damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, they were negligent entitling the Plaintiff to recovery actual damages under 15 U.S.C. § 1681o.

285.     The Plaintiff is entitled to recovery costs and attorney's fees from EXP and EQ in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Erika George prays that this Court:

A.     Declare that EXP, EQ, and 's credit reporting actions violate the FCRA;

B.     Enter judgment in favor of Plaintiff Erika George, and against EXP and EQ for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.     Or, in the alternative, enter judgment in favor of Plaintiff Erika George, and against EXP and EQ, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.     Grant other such further relief as deemed just and proper.

## Count VI: Violation Of 15 U.S.C. § 1681s-2(B) of the FCRA- Duties of Furnishers of Information upon Notice of Dispute

286.     Plaintiff incorporates by reference all other paragraphs of this Petition as if fully stated herein.

287.     Defendants NCA, CCS, RCS, and MCM violated 15 U.S.C. § 1681s-2(b) by continuing to report the NCA, CCS, RCS, and MCM representations within Plaintiff's credit file with EXP and

EQ without also including a notation that this debt was disputed; by failing to fully and properly investigate the Plaintiff's dispute of the NCA, CCS, and MCM representations; by failing to review all relevant information regarding same; by failing to accurately respond to NCA, CCS, and MCM; by failing to correctly report results of an accurate investigation to every other credit reporting agency; and by failing to permanently and lawfully correct its own internal records to prevent the re-reporting of the NCA, CCS, and MCM representations to the consumer reporting agencies.

288.    As a result of this conduct, action and inaction of NCA, CCS, and MCM, the Plaintiff suffered damage by loss of credit; loss of the ability to purchase and benefit from credit; and the mental and emotional pain, anguish, humiliation, and embarrassment of credit denials.

289.    Defendants NCA, CCS, and MCM's conduct, action and inaction were willful, rendering them liable for actual or statutory damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, it was negligent entitling the Plaintiff to recover actual damages under 15 U.S.C. § 1681o.

290.    Plaintiff is entitled to recover costs and attorney's fees from NCA, CCS, and MCM in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and § 1681o.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, Erika George, prays that this Court:

A.    Declare that NCA, CCS,and MCM's credit reporting actions violate the FCRA;

B.    Enter judgment in favor of Plaintiff Erika George, and against NCA, CCS, and MCM for actual damages, statutory damages, costs, and reasonable attorneys' fees as provided by §1681n of the FCRA;

C.    Or, in the alternative, enter judgment in favor of Plaintiff Erika George, and against NCA, CCS, and MCM, for actual damages, costs, and reasonable attorneys' fees as provided by §1681o of the FCRA; and

D.    Grant other such further relief as deemed just and proper.

## JURY DEMAND

291.    Plaintiff demands a trial by jury on all Counts so triable.

Dated: March 5, 2025

Respectfully Submitted,

**HALVORSEN KLOTE**

By:        /s/ Joel Halvorsen

Joel S. Halvorsen, #67032
680 Craig Road, Suite 104
St. Louis, MO  63141
P: (314) 451-1314
F: (314) 787-4323
joel@hklawstl.com
*Attorneys for Plaintiff*